UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:11-CR-00072 |
| v. | : | **OPINION AND ORDER** |
| RICARDO BEASLEY | : | |

Defendant Beasley stands charged with a distribution of controlled substances count and three firearms-related counts. Defendant filed a motion to suppress evidence (doc. 20) and a motion to suppress statements (doc. 21) on July 29, 2011, both of which the Court denied on September 6, 2011 (doc. 30). Pending before the Court now are Defendant's Second Motion to Suppress Statements (doc. 51); a Motion in Limine (doc. 52); a Motion for Reconsideration of the Motion to Suppress Statements (doc. 53); and a Motion to Exclude Evidence (doc. 54).

The Court held a competency hearing on February 29, 2012, and found Beasley competent to assist in his defense and to stand trial. Also at that time, the Court granted Beasley's request for an evidentiary hearing on the pending motions to suppress and to exclude evidence (doc. 55). That hearing was held on March 21, 2012. For the reasons that follow, the Court denies Defendant's Motion for Reconsideration of the Motion to Suppress Statements (doc. 53) and his Motion to Exclude Evidence (doc. 54). The Court

1

holds Defendant's Second Motion to Suppress Statements (doc. 51) and his Motion in Limine (doc. 52) in abeyance, to be addressed as needed at trial.

The Court notes that its September 2011 decision denying Beasley's motion to suppress statements was predicated on the Court's finding that the testimony of Corporal Vanover was credible and that Defendant had presented nothing to call that credibility finding into question (doc. 30). To grant Beasley's current Motion for Reconsideration of the Motion to Suppress Statements, the Court would have to find that, with the new evidence put forth by Beasley, Corporal Vanover's testimony should not have been credited.

In the pending motions, Beasley asserted that he had newly-discovered evidence demonstrating certain improprieties on the part of the Elmwood Police Department. In order to be successful in his attempt to suppress the evidence the Government seeks to use against him, Beasley would need to show both police impropriety in handling criminal cases and, more importantly, a relationship between that impropriety to his case. Specifically, with respect to Beasley's statements, he would need to show how that impropriety impugns Corporal Vanover's testimony, and, with respect to the Government's physical evidence, he would need to show how that impropriety necessitates suppression. While Beasley did present evidence of questionable behavior of some of the

officers of the Elmwood police department, he failed to link that evidence to his case such that the Court could reasonably suppress either the statements at issue or the physical evidence the Government seeks to use against Beasley.

I. **The Evidence Adduced at the March 2012 Hearing**

    A. <u>The Video Recording</u>

At the hearing, the Court viewed the video recording of the execution of the warrant in this case. Beasley contends that the video recording shows two things important to this case: that another suspect on the scene was interrogated without first being given his <u>Miranda</u> warnings and that the officers executing the warrant were more interested in procuring the television sets and other electronic equipment on the scene for their own use than they were in following proper police procedure. The Court found the recording nearly unintelligible both visually and aurally at the hearing. However, upon subsequent review, the Court notes that it does show another man, not Defendant, being interrogated by officers without first having been Mirandized. In addition, one officer can be heard to say excitedly, "There's another big TV for us," to which another officer responds with either "Booyah!" or "Oh, yeah" and "And a little one."

    B. <u>Former Sergeant Darty's Testimony</u>

Former Sergeant Darty was a police officer with the Elmwood police department for six years. As sergeant, he was

3

second-in-command to the chief. He testified regarding the practices and policies of the chief. Specifically, he noted that he had recently been interviewed by a detective with the Hamilton County Sheriff's Department regarding an inmate allegedly assaulted by Chief Peskin. In addition, he testified that one of his duties as Sergeant was to be in charge of the evidence room and that he relieved himself of that duty in January of 2011 when Chief Peskin removed the lock from the evidence room. Darty stated that he was the only one with the key to that room but that, after Chief Peskin removed the lock, Chief Peskin and five to six other officers entered the room. Darty felt the removal of the lock presented a chain of custody violation and that it jeopardized evidence to have it stored in an unlocked room, where officers could and did enter without authorization. He relieved himself of the evidence-custodian duty because he didn't want anything to do with it since the evidence was compromised. He said that when the lock was cut off the room, pain pills were removed from the room and evidence was thrown in the dumpster. Further, he said that drugs were stored in Corporal Vanover's office.

Darty noted that the last time he saw evidence improperly stored in people's offices was August 2011, where he saw a box on someone's desk that contained heroin, crack and powder cocaine for a case that had already been heard. He did not know whether the evidence at issue in Beasley's case was stored in that unlocked

4

room because the evidence was obtained after he relinquished his oversight duty, though he noted that it should have been stored there.

Darty also testified that at one point Chief Peskin ordered an officer to take some money from the drug fund (monies seized during drug investigations) in order to give it to Chief Peskin's father, supposedly for his father's work as a confidential drug informant. Darty said that he made Corporal Vanover aware of this and that Vanover said something to the chief and the money was put back into evidence.

In addition, Darty testified that the Elmwood police department has a form for Miranda waivers, which they use for the big felony cases. When asked whether, in his experience with Chief Peskin and Corporal Vanover, the department's Miranda procedures were followed, he answered that it depended on which officer and what the charges and arrest were for. He saw the policy violated where, for example, Miranda warnings weren't given until the officer got something they needed to know and then the officer would stop and Mirandize the suspect, but he did not attribute that behavior to any specific individual or any specific case. He did not participate in the execution of the warrant in this case because, he said, he had made accusations regarding the way the department handled the giving of Miranda warnings and the issues with evidence storage so he was not allowed to participate in the

5

execution of warrants even though he was second-in-command.

Beasley's counsel then proffered that Darty and the other Elmwood officers were threatened by Chief Peskin after Darty reported the evidence-room misconduct to the City of Elmwood as well as when it became known that the Hamilton County Sheriff's office was investigating the Elmwood police department.

**C.      Daniel Steers' Testimony**

Defendant presented the testimony of Daniel Steers, a retired Cincinnati police officer and an expert in police procedure.  Steers reviewed the recording of the execution of the warrant as well as all other discovery tendered by the Government in this case.  With respect to the execution of the warrant, he noted that it is his guidance that once video-recording has begun, it should continue through the end of the event to protect the integrity of the investigation and that, here, the recording ended abruptly and clearly before the end of the event since it did not include the arrest and interrogation of Beasley.  In addition, he noted his concern about the seizing of the television sets and other electronic equipment, observing that nothing he saw showed the required nexus between drug proceeds and the items that were seized.  Indeed, he opined that there may be a theft-related offense with respect to what he viewed as the improper seizing of those items.

Regarding the chain of custody issue, Steers noted that

in order to really keep the integrity of evidence, the evidence should always be secured, every step should be signed for and documented, and it should be kept in a location with limited access, a dedicated evidence storage space accessible only to a limited number of people. He stated that if he encountered circumstances similar to those described by Darty, he would have to conduct an inventory and a lengthy investigation to ensure that the integrity of the evidence was maintained.

**II. Defendant's Motion to Exclude Evidence**

In his Motion to Exclude Evidence, Beasley moves the Court to exclude any evidence of crack cocaine and fake narcotics as well as any evidence regarding a firearm found in the premises of Beasley's arrest (doc. 54). He bases this motion on the assertion that the possibility of misidentification or alteration of the evidence cannot be eliminated as a matter of reasonable probability because of the breaches in security in the Elmwood evidence room and the use of drug-investigation resources for personal use (Id., citing United States v. McFadden, 458 F.2d 440, 441 (6th Cir. 1972)). In addition, Beasley argues that because Chief Peskin, who participated in the arrest and evidence-gathering in this case, threatened other officers involved in this case, failed to record the seizing of the evidence here, and has a history of not preserving evidence, the Court cannot trust that the evidence purported to have been seized at the apartment at issue

7

can properly be attributed to Beasley.

If true, the allegations about the breaking of the evidence room lock, the unfettered and unregulated access to the room, and the storing of evidence in offices are certainly troubling as a global issue for the Elmwood police department. However, as noted above, neither the video recording nor Darty's testimony linked these allegations to the evidence in this particular case. The allegations of the appropriation of drug-investigation resources for personal use, i.e., paying Chief Peskin's father as a confidential informant or exclaiming with glee, "There's another big TV for us", are similarly disturbing. But, again, they are insufficient to move the Court to suppress the evidence in this case as they do not go to the issue of misidentification or alteration of the evidence here. The evidence put forth by Beasley raises the general possibility of tampering with some evidence by some members of the Elmwood police department, and that is insufficient for exclusion of the evidence. See United States v. Allen, 106 F.3d 695, 700 (6th Cir. 1997)("Merely raising the possibility of tampering is insufficient to render evidence inadmissible.") Further, chain of custody issues generally go to the weight, not the admissibility, of the evidence. Id. For these reasons, the Court DENIES Defendant's Motion to Exclude Evidence (doc. 54).

**III. Defendant's Motion to Reopen the Motion to Suppress Statements**

In his initial Motion to Suppress, Beasley moved the Court to suppress any and all statements made in response to custodial interrogation (doc. 21). The Court denied that motion, finding that Corporal Vanover had provided Beasley with his Miranda warnings prior to interrogating him, such that any statements obtained by Corporal Vanover subsequent to those warnings were not procured in violation of the Fifth Amendment. In his motion asking the Court to reconsider its September 2011 decision denying his motion to suppress statements, Beasley argues that Corporal Vanover's credibility is called into question by evidence that Chief Peskin has threatened subordinates if they report incidents of police misconduct and that it is his practice to stop recordings before incidents of misconduct occur.

After hearing and viewing Beasley's evidence, the Court does not find that Corporal Vanover's credibility was impugned such that reversal of the Court's decision would be warranted. Beasley contends that the police failure to provide the warnings to the other man present at the apartment in question lends credibility to Beasley's assertion that they failed to provide him warnings as well. Corporal Vanover testified at the first suppression hearing that he administered the Miranda warnings and that the arresting team viewed the recitation of rights. Essentially, Beasley asks the Court to infer from the recording of the execution of the warrant that, because the other man present was not first

9

Mirandized prior to being interrogated, Beasley's assertion that he was not Mirandized should be credited over the testimony to the contrary of Corporal Vanover. The Court declines to make the inferential leap Beasley is requesting. The fact that the other man in the room was not Mirandized prior to questioning does not affect the Court's assessment of Corporal Vanover's credibility. Had Corporal Vanover said that he had Mirandized that other man, and the recording showed to the contrary, clearly that would call his credibility into question. However, Corporal Vanover merely testified that he administered the <u>Miranda</u> warnings to Beasley and that it was witnessed by the arresting team. The fact that the other man in the apartment did not receive warnings is a separate issue entirely and has no bearing on whether or not Beasley received them.

The proffered allegations that Chief Peskin threatened his officers should they report incidents of misconduct are, if true, serious. However, as above, none of the evidence put forth connected the allegations of misconduct in the Elmwood police department with what happened in this particular case such that the Court should suppress Beasley's statements. On the contrary, the video recording arguably cuts against Beasley's argument regarding misconduct with respect to interrogations. That is, assuming, <u>arguendo</u>, that the other man in the apartment was subjected to a custodial interrogation, as it appears he was, the recording shows

that no Miranda warnings were given, which would have been improper. Therefore, if it was the Chief's practice to always stop recording prior to engaging in improper behavior, that custodial interrogation absent Miranda warnings should not have been recorded. In any event, the Court maintains its credibility finding with respect to Corporal Vanover and thus AFFIRMS its September 2011 denial of Beasley's motion to suppress statements (doc. 30) and DENIES Beasley's reopened motion (doc. 53).

**IV. Defendant's Second Motion to Suppress Statements**

The statements at issue in Beasley's first Motion to Suppress Statements, which the Court denied in September 2011 and reaffirms with this Opinion, were statements made while Beasley was subject to custodial interrogation, and the only issue before the Court was to determine whether Corporal Vanover Mirandized Beasley prior to Beasley answering the questions put to him. With his Second Motion to Suppress Statements, Beasley seeks to suppress a statement that he argues was not covered by that first motion and about which the Government offered no evidence. Specifically, he believes that the Government intends to produce a confession regarding a bag containing crack cocaine that the Government contends was a spontaneous statement not resulting from interrogation, and he seeks to suppress that alleged confession (doc. 51).

The Government argues in response that, because the

statement was not made in response to interrogation, Miranda doesn't apply and suppression is unwarranted (doc. 57).

The Government is unarguably correct that Miranda's requirements don't apply to spontaneous voluntary statements. See Miranda v. Arizona, 384 U.S. 436, 478 (1966). However, the Government has offered no proof other than its own assertion that the statement at issue was a volunteered statement. Indeed, there appears to have been no proof at all put forth with respect to this statement that Beasley allegedly made, in which he supposedly took responsibility for the bag of powder found at the scene that turned out to contain crack cocaine. The Government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence. United States v. Caldwell, 872 F.2d 1029 (6th Cir. 1989); Edwards v. Arizona, 451 U.S. 477 (1981). The Government has not met its burden with respect to this statement; an assertion by the Government attorney simply doesn't qualify as proof by a preponderance of the evidence.

However, given the unusual way this case has evolved, with multiple motions to suppress and a motion to reopen the first motion to suppress, the Court finds that justice is best served here by holding its decision on this Second Motion to Suppress in abeyance. Should the Government seek to use this alleged statement against Beasley at trial, the Court will hold an evidentiary hearing at that time, outside the presence of the jury, to

determine whether the statement should be suppressed.

**V.   Defendant's Motion in Limine**

Arguing relevance and prejudice, Beasley moves the Court to exclude at trial any evidence of fake narcotics and any evidence that Beasley "or anyone else" received stolen property (doc. 52, citing Fed. R. Evid. 403 and 404(b)).  Because the Court will be in a better position to assess both the relevance of the evidence and any potential prejudice to Beasley as the evidence unfolds at trial, the Court holds this motion in abeyance until trial and will rule on it as needed at that point.

**VI.  Conclusion**

For the reasons set forth above, the Court denies Defendant's Motion for Reconsideration of the Motion to Suppress Statements (doc. 53) and his Motion to Exclude Evidence (doc. 54) and holds Defendant's Second Motion to Suppress Statements (doc. 51) and his Motion in Limine (doc. 52) in abeyance until trial. Trial in this matter is set for April 10, 2012, at 1:30 P.M.

SO ORDERED.


Dated: March 29, 2012          /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge